IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VIRGINIA BROOKS, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )CIVIL ACTION 21-0302-WS-MU |
| | ) |
| RANDALL B. KNUTSON, etc., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on motions to dismiss filed by defendants Gulf Health Hospitals d/b/a Thomas Hospital ("Gulf") and Adam Watterson, M.D. (Docs. 56, 58).  The parties have filed briefs in support of their respective positions, (Docs. 56, 58, 63, 67, 68), and the motions are ripe for resolution.  After careful consideration, the Court concludes that Dr. Watterson's motion is due to be granted and that Gulf's motion is due to be denied.


## BACKGROUND

According to the original complaint ("the Complaint"), the plaintiff's decedent ("Brooks") had a spinal epidural abscess ("SEA"), a condition that can lead to devastating neurological deficits and significant morbidity and mortality, to prevent which timely surgical and/or medical intervention is required.  SEA usually causes local and/or radicular back pain and percussion tenderness, and persons with diabetes mellitus, chronic renal failure, use of intravenous drugs (including infusions of cardiac medications), and a compromised immune system are more susceptible to developing SEA.  Appropriate diagnostic testing and evaluation, including imaging with enhancement, will determine the location and extent of SEA.  (Doc. 1 at 4-5, ¶¶ 16-20).

According to the Complaint, Brooks had diabetes mellitus, chronic renal failure, and a compromised immune system, and he took intravenous infusions of cardiac medication.  Brooks presented at Thomas Hospital four times in 2018 and complained of local and/or radicular back pain.  These visits occurred on August 5, September 28, October 2, and November 4.  In September, it was noted that Brooks had experienced bouts of such pain for about a month and that the pain had intensified.  In November, it was noted that his back pain had been ongoing for many months and that he had visited the hospital repeatedly with such complaints. (Doc. 1 at 4-5, ¶¶ 10-13, 17).

According to the Complaint, Brooks returned to Thomas Hospital on or about February 4, 2019.  On this visit, Dr. Watterson and Dr. Knutson opined there was a non-specific paraspinal soft tissue thickening and/or mass beginning at T3 and most prominent at T6-T8.  A bone scan exhibited a somewhat motheaten appearance of these vertebral bodies and on the lateral cortical margins.  On or about the same day, Dr. Donati evaluated Brooks and opined that he had experienced moderate erosion of the vertebral bodies.  (Doc. 1 at 4, ¶¶ 14-15).

According to the Complaint, Brooks died on July 12, 2019, following the deterioration of his condition.  (Doc. 1 at 5, ¶ 23).  The Complaint, which invokes the Alabama Medical Liability Act ("AMLA") and Alabama's wrongful death statute, was filed on July 8, 2021, shortly before expiration of Alabama's two-year limitations period for such claims.  The Complaint names Gulf and Drs. Watterson, Knutson, and Donati as defendants.  On August 22, 2021, the plaintiff moved for leave to file a second amended complaint.  (Doc. 42).[1]  The Court granted the motion, and the plaintiff filed her second amended complaint on September 7, 2021.  (Doc. 54).  Gulf and Dr. Watterson move to dismiss claims

---

[1] The plaintiff filed a first amended complaint on July 19, 2021, (Doc. 6), in response to the Court's assessment, on its *sua sponte* examination of its subject matter jurisdiction, that the Complaint did not adequately set forth the citizenship of the defendants.  (Doc. 5).

against them based on Brooks' 2018 hospital visits, on the grounds that these claims were not asserted in the Complaint and that, because they do not relate back to the filing of the Complaint under Alabama Rule of Procedure 15(c)(2), they are barred by the statute of limitations.

## DISCUSSION

"An amendment of a pleading relates back to the date of the original pleading when … the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading …."  Ala. R. Civ. P. 15(c)(2).

As the parties recognize, if the claim under consideration was asserted in the Complaint, it is timely without resort to Rule 15(c)(2).  The plaintiff suggests that the claims the movants describe as newly added are in fact embedded within the Complaint.  (Doc. 63 at 12, 14, 16).  The Court cannot agree.

In a section entitled, "Wrongs Complained of and Perpetrated by" the individual defendants, the Complaint alleges them to have acted below the standard of care "on or about and after February 5, 2019."  (Doc. 1 at 9, ¶ 34). This is an explicit limitation of the claim against Dr. Watterson to his care and conduct occurring in 2019.  The second amended complaint newly identifies Dr. Watterson as the consulting doctor with respect to the September 28 visit, (Doc. 54 at 5, ¶¶ 12-13), and it expands the dates on which he acted below the standard of care to "on or about and after the dates specifically listed hereinabove when [he] provided medical treatment and care to Mr. Brooks."  (*Id*. at 13, ¶ 43). Because the Complaint alleges that Dr. Watterson committed malpractice only in and after February 2019, and because the second amended complaint alleges that he also committed malpractice in September 2018, the second amended complaint introduces a new claim against Dr. Watterson.

In a section entitled, "Wrongs Complained of and Perpetrated by Thomas Hospital," the second amended complaint lists six ways in which Gulf, acting

through its employees and/or agents, acted below the standard of care.  (Doc. 54 at 10, ¶ 36).  Two of the six are:  "[f]ailing to have procedural checks and internal controls to prevent Mr. Brooks from coming to their emergency room with the same complaints many (3 or more) times over the course of many (3 or more) months and to receive no relief or specific diagnose [sic] for his condition" and "[f]ailing to adequately staff the emergency room to permit a patient to have proper and adequate time to be evaluated and not summarily processed which is below the standard of care …."  (*Id.*, ¶ 36(b)-(c)).  These allegations do not appear in the corresponding paragraph of the Complaint.  (Doc. 1 at 6-7, ¶ 27).  As the plaintiff offers no basis on which it could nevertheless determine that these claims appear in the Complaint,[2] the Court concludes that the quoted language introduces new claims against Gulf.

Because the claims challenged by the movants are new to the second amended complaint, the question becomes whether they "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original" complaint within the contemplation of Alabama's Rule 15(c)(2).  The Alabama Supreme Court, in cases relied on by the parties,[3] has identified several markers to guide this analysis:

---

[2] A separate paragraph of the Complaint, also within the section identifying wrongs complained of, alleges that Gulf is liable under the doctrine of corporate negligence for failure to supervise its employees/agents to ensure proper patient care, in part by failing to have a specific course of action to provide adequate medical evaluation of a patient repeatedly presenting over a course of months with similar complaints.  (Doc. 1 at 7, ¶ 29.a).  Because the plaintiff does not rely on paragraph 29 in its argument, the Court declines to consider whether it presents the same claim as paragraph 36(b) of the second amended complaint.

[3] The Alabama courts have addressed Rule 15(c)(2) on many other occasions but, as the parties have not asked the Court to consider any of them, the Court confines its review to the small subset of cases on which they rely.

"[A]n amendment which states an entirely new claim for relief based on different facts will not relate back." *Sonnier v. Talley*, 806 So. 2d 381, 387 (Ala. 2001) (internal quotes omitted).

"If the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged … will relate back …." *Sonnier*, 806 So. 2d at 386-87 (internal quotes omitted).  This includes an amendment "specifying particular acts of negligence under a general allegation of negligence." *Id*. at 387 (internal quotes omitted).

Because the term 'cause of action' emphasizes "the specified conduct of the defendant upon which the plaintiff relies to enforce his claim[,] … an amendment which changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back." *Sonnier*, 806 So. 2d at 387 (internal quotes omitted).  "Thus, an amendment will relate back which changes the theory of recovery as to the type of negligence claimed, or adds additional grounds of negligence …." *Id*. (internal quotes omitted).

"[A]mendments that advance distinct legal theories, such as a tort when the original claim arose in contract, can relate back … whenever the amendment is based upon the same set of facts presented in the original complaint." *Ex parte Johnston-Tombigbee Furniture Manufacturing Co*., 937 So. 2d 1035, 1042-43 (Ala. 2005).

"An amended complaint relates back to the original complaint … when the same substantial facts are pleaded merely in a different form." *Prior v. Cancer Surgery, P.C*., 959 So. 2d 1092, 1095 (Ala. 2006) (internal quotes omitted).

Where "the amended complaint addressed an incident distinct in time and distinct in conduct alleged to be wrongful, … this Court held that the amended complaint did not relate back …." *Prior*, 959 So. 2d at 1096 (internal quotes omitted).

These principles have been employed in the cases cited by the parties.  In *Sonnier*, the defendant performed a hysterectomy on the plaintiff in April 1991. 806 So. 2d at 383.  The original complaint included "a general count alleging negligence and malpractice against Dr. Sonnier in regard to his rendering medical care and treatment to Talley from June 1990 through, and including, October 1991."  *Id*. at 387.  The amended complaint "added allegations that, during the months following her surgery, Dr. Sonnier … made misrepresentations of fact regarding her purported cancer, the need she was supposed to have had for a hysterectomy, and the need for her to return for medical care to avoid a recurrence of cancer," which the Court construed as stating claims of negligence and malpractice arising out of, and relating to, the defendant's medical care and treatment between June and October 1991.  *Id*. at 383, 387.  Because the original complaint "gave Dr. Sonnier fair notice of the general fact situation out of which [the plaintiff's] allegations of misrepresentation arise," and because the amended complaint "merely makes more specific what has already been alleged … by specifying particular acts of negligence under a general allegation of negligence," the misrepresentation claims asserted in the amended complaint related back to the filing of the original complaint.  *Id*. (internal quotes omitted).

In *Prior*, the plaintiff's decedent underwent surgery on August 16, 1999 and died in hospital two weeks later.  The plaintiff sued the surgeon (Dr. Davidson) and the medical practice that employed him (Cancer Surgery) for malpractice and wrongful death, including claims of vicarious liability against Cancer Surgery for Dr. Davidson's conduct during and after surgery.  959 So. 2d at 1093-94.  In her amended complaint, the plaintiff "sought to hold Cancer Surgery vicariously liable for the conduct of Dr. Walker as well as for that of Dr. Davidson."  *Id*. at 1094.  Dr. Walker had cared for Dr. Davidson's patients, in Dr. Davidson's absence, during the discrete period of August 20 to 22.  *Id*. at 1093-94. Because the allegations regarding Dr. Walker "add[ed] new facts," and because the amended complaint sought to base Cancer Surgery's liability on the different

actions of "a different doctor" on "a different day" from the actions (those of Dr. Davidson on days other than August 20-22) forming the basis of the original complaint's claim of vicarious liability, the amended complaint did not relate back to the original. *Id*. at 1095-96, 1097.

Similarly, in *Weber v. Freeman*, 3 So. 3d 825 (Ala. 2008), the plaintiff's decedent was seen in the emergency room of the defendant hospital (Jackson) by Dr. Sweet and, two days later, by Dr. Doyan. *Id*. at 827-28. The original complaint sought to hold Jackson liable for the conduct of Drs. Sweet and Doyan. *Id*. at 828-29. An amended complaint sought to hold Jackson liable for the conduct of Dr. Weber, a radiologist, in not notifying Dr. Sweet or the plaintiff after she correctly interpreted the x-rays ordered by Dr. Sweet as revealing a potentially life-threatening bowel obstruction. *Id*. at 830. The original complaint referenced the x-rays and alleged that Dr. Sweet, who reviewed them, should have realized the decedent had a potentially fatal condition. *Id*. at 827. The amended complaint nevertheless did not relate back because, as in *Prior*, it sought to hold the entity liable for the different conduct of a different doctor than was addressed in the original complaint. *Id*. at 835.

In *Johnston-Tombigbee*, the original complaint sought to reform a deed or quiet title, alleging that, when the property was acquired by the defendant and his brother, it was their intention that title be vested in the plaintiff (which they jointly owned). 937 So. 2d at 1036, 1039, 1046. The amended complaint added claims of conversion, unjust enrichment, and breach of fiduciary duty, alleging that, when the property was acquired, the brothers intended to place title in their personal names but to consider the property an asset of the plaintiff. *Id*. at 1036, 1039, 1045-46. The Court of Civil Appeals held that the amended complaint did not relate back because it "completely changed the crucial factual allegation" regarding intent. *Id*. at 1039. The Supreme Court acknowledged that there are situations "when different factual allegations in an amended complaint result in such changes to the original theory of the case as to defeat the application of the

relation-back doctrine." *Id*. at 1041.  However, the original complaint identified the occurrence (the transfer of title), the nature of the relief sought (that title be vested in the plaintiff), and the facts of the occurrence (the purchase of the tract), and the amended complaint altered none of this.  *Id*. at 1045-46.  The original complaint thus gave the defendant "fair notice of the general fact situation out of which the claim … arises," such that the altered allegation regarding the brothers' intent regarding where title should lie did not preclude relation back.  *Id*. at 1046 (internal quotes omitted).

A partial outline of the parameters of Alabama's relation back doctrine may be distilled from these cases.  An amendment that adds a new defendant (at least one not properly named under Alabama's fictitious defendant rules), or that seeks to hold an existing defendant liable for the conduct of a new actor, at least generally will not relate back.  An amendment that bases a new claim on different allegedly wrongful conduct, or on conduct occurring within a different time frame, from that asserted in the original complaint at least generally will not relate back, even though the actor remains the same.  In contrast, an amendment that fleshes out particular wrongful conduct when the original complaint at least generally described the conduct (by that actor and during that time frame) as wrongful, at least generally will relate back.  Similarly, an amendment that adds or substitutes a claim based on a different legal theory but the same substantial facts at least generally will relate back.  And some alterations of factual allegations, such as the mental state of an actor, at least generally will not foreclose relation back.

As will be discussed below, application of these principles to the plaintiff's pleadings confirms that her amendment as to Gulf relates back but that her amendment as to Dr. Watterson does not.

### A.  Dr. Watterson.

The Complaint devotes one brief paragraph to each of Brooks' four 2018 visits to Thomas Hospital.  Although a named, non-defendant physician is

identified as having seen Brooks during his August 5 and November 4 visits, no physician is identified as having seen Brooks on September 28; instead, it is alleged that he was seen by unnamed "hospital employees and/or agents." (Doc. 1 at 4, ¶¶ 10-13). Dr. Watterson is introduced only in paragraph 14, where it is alleged that, in February 2019, he rendered an opinion describing findings from a bone scan of Brooks. (*Id.*, ¶ 14). Dr. Watterson is next mentioned in paragraph 22:

> From all of Mr. Brooks' hospital visits and treating with Drs. Randall B. Knutson, M.D.; Donna Donati, M.D., Adam Watterson, M.D., it was unreasonable and below the standard of care for these doctors not to have detected Mr. Brooks' spinal abscess and initiated [a] treatment plan to that [sic] would have more likely than not saved Mr. Brook's [sic] life.

(*Id.* at 5, ¶ 22). The Complaint then articulates the plaintiff's claim against Dr. Watterson and the other physician defendants:

> The Defendants, Drs. Knutson, Donati, and Watterson, were careless, wanton, willful, and/or negligent *on or about and after February 5, 2019*, in the care and treatment of Mr. Brooks. The relationship of doctor/physician and patient existed between Drs. Knutson, Donati, and Watterson and Mr. Brooks, and Defendants are liable to the Plaintiff in this case.

(*Id.* at 9, ¶ 34 (emphasis added)).

As noted previously, the second amended complaint alters the original by naming Dr. Watterson as the consulting physician on September 28 and describing his treatment of Brooks on that date. (Doc. 54 at 5, ¶¶ 12-13). The second amended complaint then modifies the italicized portion of the Complaint's paragraph 34 to read, "or or about and after the dates specifically listed hereinabove when [Dr. Watterson] provided medical treatment and care to Mr. Brooks." (*Id.* at 13, ¶ 43).

The Complaint could not more explicitly limit the basis of Dr. Watterson's liability to his conduct in and after February 2019. The second amended complaint's effort to hold him liable for conduct occurring in September 2018

9

"addresse[s] an incident distinct in time," *Prior*, 959 So. 2d at 1096 (internal quotes omitted), and "states an entirely new claim for relief based on different facts." *Sonnier*, 806 So. 2d at 387. And because Dr. Watterson is not even mentioned in the Complaint's description of the September 28 encounter, the second amended complaint effectively adds him as a new defendant – not to the action but to a malpractice claim based on a discrete hospital visit. In the language of Rule 15(c)(2), the plaintiff's claim that Dr. Watterson committed malpractice in September 2018 does not arise out of the conduct, transaction or occurrence set forth against him in the Complaint (*i.e.*, his February 2019 treatment of Brooks). The new claim therefore cannot relate back to the filing of the Complaint.

The plaintiff struggles valiantly but in vain against this pellucid conclusion. First, she points to the reference in paragraph 22 to "all of Mr. Brooks' hospital visits." (Doc. 63 at 9, 12.) Paragraph 22, however, plainly does not purport to saddle Dr. Watterson or the other physician defendants with responsibility for any negligence or malpractice occurring during Brooks' 2018 hospital visits. Instead, it alleges only that, given those prior visits and their reflection of continuing, undiagnosed back pain, the individual defendants *in February 2019* breached the standard of care. Paragraph 34, by explicitly limiting liability to February 2019, removes any possible doubt on this score.

The plaintiff next cites to paragraph 35(c) as reflecting that the Complaint "link[ed] all of these events up in her failure to diagnose and treat claim and [sic] part of a series of negligent encounters." (Doc. 63 at 12.) Paragraph 35(c) reads as follows:

> [The individual] Defendants were unreasonably deficient in Mr. Brooks' medical care because his condition worsened even though he repeatedly came to Defendants' hospital for treatment of his back pain and for months complained, treatment did not met [sic] the required standard of acceptable medical care.

(Doc. 1 at 9-10, ¶ 35(c)). This language does not accuse Dr. Watterson or the other physician defendants of any wrongful conduct in 2018 but, as with

10

paragraph 22, only faults them for allowing Brooks' condition to deteriorate in 2019 without diagnosis despite his history of complaints.  Any possible ambiguity is eliminated by observing that paragraph 35 (of which paragraph 35(c) is part) catalogs the "ways" in which Dr. Watterson and the other physician defendants violated the standard of care, (*id*. at 9, ¶ 35), but does not alter the explicit allegation of paragraph 34 that the only time they did so was in and after February 2019.

The plaintiff properly notes that relation back focuses on "the specified conduct *of the defendant*."  *Sonnier*, 806 So. 2d at 387 (emphasis added, internal quotes omitted).  (Doc. 63 at 12).  As noted above, one of several fatal flaws in the plaintiff's position is that the Complaint does not specify any conduct *of Dr. Watterson* on the critical date of September 28.  The plaintiff counters this unfavorable situation by suggesting that, because paragraph 11 alleges that Brooks was seen by "hospital employees and/or agents," and because paragraph 5 alleges that Dr. Watterson was an agent or employee of Thomas Hospital, he was always a defendant as to the September 28 visit, such that the conduct alleged in the Complaint always applied to him, with the second amended complaint's naming of him simply adding "greater detail" regarding his identity as a defendant as to the September 28 visit.  (*Id*.).  The plaintiff offers no authority or reasoned analysis to support this curious idea, which alone warrants its rejection.[4]

The plaintiff trumpets *Sonnier* as supporting relation back in this case. (Doc. 63 at 9, 12).  As noted, the original complaint in *Sonnier* contained a general claim for negligence and malpractice against a particular named defendant, covering a delineated 17-month period.  The amended complaint alleged that,

---

[4] The Court does note, however, that the logic of the plaintiff's position would require the conclusion that Drs. Knutson and Donati are also defendants with respect to the September 28 hospital visit (since they also are alleged to be agents or employees of Thomas Hospital, (Doc. 1 at 2, ¶¶ 3, 4)), which would place counsel in presumptive violation of Rule 11 absent the slightest suggestion that these defendants were, or were ever believed to be, involved in Brooks' treatment on September 28.

during a five-month period falling entirely within the 17-month period, the previously alleged negligence and malpractice consisted of misrepresentations regarding the plaintiff's surgery and health.  As noted, relation back was held appropriate under these circumstances because the amended complaint merely identified specific acts of negligence within a previous general allegation of negligence.  This case bears little resemblance to *Sonnier*.  Unlike in *Sonnier*, the second amended complaint extends a defendant's alleged wrongdoing beyond the temporal boundaries of the original.  Unlike in *Sonnier*, the second amended complaint does not merely add detail to a pre-existing allegation of wrongdoing by a defendant but identifies a new instance of his wrongdoing.  Whether or not *Sonnier* is as "expansive" as the plaintiff perceives, (*id.*), it does not support relation back in this instance.

As noted, a new claim relates back if it arises out of the conduct, transaction, or occurrence set forth "or attempted to be set forth" in the original complaint.  Ala. R. Civ. P. 15(c)(2).  The plaintiff argues that, even if the Complaint does not set forth the September 28 hospital visit as an instance of malpractice by Dr. Watterson for which relief is sought (and it plainly does not), she attempted therein to set it forth as conduct, a transaction, or an occurrence imposing liability on him.  (Doc. 63 at 15-16).  The plaintiff provides no legal authority or even an educated guess as to the scope of the "attempted to be set forth" alternative, and the Court is under no obligation to search for such authority or rationale on her behalf.  It seems likely that the reach of the phrase is limited to close cases, where the gap between the conduct, transaction, or occurrence actually alleged and that intended to be alleged is small and/or the result of imprecision or ambiguity inherent in the English language; absent such a restriction, the potential for abuse by *post hoc* assertions of an intent to allege matters not actually alleged would seem to be almost limitless.  Whatever the scope of the quoted phrase, it cannot extend to cases such as this one, where the original complaint explicitly limits a defendant's liability to his conduct on a

specific day removed by many months from the additional day made the focus of the amended allegations.

Finally, the plaintiff argues that, even if her new claim against Dr. Watterson does not relate back under Alabama Rule 15(c)(2), it does relate back under Federal Rule 15(c)(1)(B). (Doc. 63 at 17). Assuming without deciding that the federal analog to Alabama Rule 15(c)(2) is relevant in this diversity action,[5] the plaintiff has cited only one federal case construing it,[6] and that opinion does not support relation back in this case. Nor does the single federal case cited by Dr. Watterson.[7]

## B. Gulf Health Hospitals.

The Complaint charges Gulf, "[a]cting through its employees and/or agents," with negligence "in the care and treatment of Mr. Brooks." (Doc. 1 at 6, ¶ 26). Gulf, "through its employees and agents, did not take the reasonable and

---

[5] "An amendment to a pleading relates back to the date of the original pleading when … the law that provides the applicable statute of limitations allows relation back …." Fed. R. Civ. P. 15(c)(1)(A). Because Alabama provides the statute of limitations in this case, its relation back rules are implicated. However, an amendment also relates back "when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading …." *Id*. Rule 15(c)(1)(B). The advisory committee notes accompanying the 1991 adoption of Rule 15(c)(1)(A) state that, whatever the source of law providing the statute of limitations, "if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." A reasonable extrapolation from this language is that, if relation back is not permitted under the law of the state providing the limitations period, relation back should then be considered under the potentially "more forgiving" federal rule. This construction is bolstered by the disjunctive "or" connecting the subparagraphs of federal Rule 15(c)(1) and appears to be the understanding of the Eleventh Circuit. *Saxton v. ACF Industries, Inc*., 254 F.3d 959, 966 n.11 (11th Cir. 2001) (en banc); *see also Vance v. Southern Bell Telephone & Telegraph Co*., 983 F.2d 1573, 1581 (11th Cir. 1993) (Fay, J., concurring in part and dissenting in part) (the advisory committee notes "indicat[e] that … the courts are to use whichever rule allows more liberal relation back").

[6] *Davenport v. United States*, 217 F.3d 1341 (11th Cir. 2000).

[7] *Moore v. Baker*, 989 F.2d 1129 (11th Cir. 1993).

necessary steps to detect, diagnose, and treat Mr. Brooks' spinal epidural abscess." (*Id.* at 5, ¶ 21). "All of the medical care, treatment, and services giving rise to this cause of action were provided by, or under the direct supervision and control of [the physician defendants], Thomas Hospital, and/or by the medical personnel/staff of said Defendants as set out herein. ...." (*Id.*, ¶ 24). Dr. Doucet, "or other employee(s) and/or agent(s) of Thomas Hospital," released Brooks on August 5, 2018. (*Id.* at 4, ¶ 10). Unnamed "hospital employees and/or agents" saw Brooks for evaluation on September 28, 2018. (*Id.*, ¶ 11). Brooks reported continuing back pain to unidentified persons at Thomas Hospital on October 2, 2018. (*Id.*, ¶ 12). Dr. McIntosh noted additional complaints on November 4, 2018. (*Id.*, ¶ 13).

The foregoing allegations make clear that Gulf is being sued for the negligence or malpractice of its employees and agents in not taking the proper steps to detect, diagnose and treat Brooks' condition. Gulf notes that the physician defendants are alleged to be its employees or agents, (Doc. 1 at 2, ¶¶ 3-5), but this is not an exclusive listing, as those named and unnamed persons who saw Brooks in 2018 are also alleged to be Gulf's employees or agents. (*Id.* at 4, ¶¶ 10-13). In identifying the universe of its employees and agents for whose acts and omissions the plaintiff seeks to hold Gulf liable, the Complaint alleges that "[a]ll of the medical care, treatment and services *giving rise to this cause of action* were provided by" (or for) the defendants "*and/or* by the medical personnel/staff of said Defendants *as set out herein* ...." (*Id.* at 5, ¶ 24 (emphasis added)). This cannot reasonably be read to mean anything other than that the plaintiff sues Gulf for the acts and omissions of not just the physician defendants and those working under them but also for those of the other employees or agents "set out" in the Complaint – *i.e.*, those implicated in Brooks' 2018 treatment. The plaintiff relies on paragraph 24, (Doc. 63 at 13-14), and Gulf offers no different construction of it.

Instead, Gulf complains that paragraph 24 does not allege any wrongdoing on the part of either Gulf or its employees and agents. (Doc. 63 at 3). Likewise,

Gulf objects that paragraphs 10-13 are "merely descriptive," without any allegation of how the providers were negligent or even that they were so. (Doc. 56 at 2; Doc. 67 at 7). These paragraphs, however, are not the only relevant ones. As noted, paragraph 21 alleges that Gulf, "through its employees and agents, did not take the reasonable and necessary steps to detect, diagnose, and treat Mr. Brooks' spinal epidural abscess." (Doc. 1 at 5, ¶ 21). The plaintiff relies on paragraph 21, (Doc. 63 at 13-14), which clearly identifies the wrongdoing of Gulf's employees and agents (including, per paragraph 24, all those providing care in 2018) for which Gulf is to be held accountable. Gulf acknowledges that paragraph 21 may describe negligent acts and omissions, but it denies that it alleges an "ongoing series of negligent acts or omissions, extending back to 2018." (Doc. 67 at 3-4). Viewing paragraph 21 in isolation, Gulf may be correct, but a complaint must be read as a whole, and the combination of paragraph 21 with paragraphs 24 and 10-13 does allege such an ongoing series.[8]

Gulf argues that, despite the clearly expansive allegations of the Complaint, the plaintiff has "admi[tted]" that her claim against Gulf is limited to the conduct of the defendant physicians in 2019. (Doc. 56 at 4-5, 8, 9; Doc. 67 at 1-2, 5, 9). Gulf filed a motion to dismiss the Complaint for failure to plead each act and omission on which its liability is based with the heightened specificity required by AMLA. (Doc. 16).[9] The plaintiff's response emphasized the allegations regarding the physician defendants before asserting that her "claims against Thomas Hospital must be read in conjunction with the claims against its employees and

---

[8] These paragraphs refute Gulf's assertion that the Complaint does not identify which 2018 hospital visits involved negligence or whose negligence is being attributed to Gulf. (Doc. 56 at 3). All the 2018 hospital visits are implicated, and all providers during those visits are implicated.

[9] Without reaching its merits, the Court ultimately denied Gulf's motion as moot after the plaintiff filed an amended complaint superseding the original and a second amended complaint superseding the first. (Docs. 30, 53).

agents.  Thus, it has a sufficient basis and notice to know the claims against it ….” (Doc. 35 at 3, 6).  Fairly read, the plaintiff's brief does not concede the absence of any claims against Gulf based on 2018 conduct but, at most, concedes the absence of any such claims as to which the Complaint satisfied the pleading requirements of AMLA, which was the only issue raised by Gulf's motion.  Even were its construction of the brief accepted, Gulf has not identified any legal principle (such as waiver, estoppel, or invited error) by which the plaintiff could be held to the position supposedly expressed in her brief, much less demonstrated that any such principle compels or even counsels such a result in this case.  To the extent Gulf argues that the brief constitutes an interpretive tool for understanding the reach of the Complaint, it cannot override the plain language of the pleading, especially given the different focus of the brief from the instant question.[10]

    With the reach of the Complaint established, an extended analysis of the legal principles regarding relation back under Alabama law is unnecessary.  Gulf's sole argument in support of its motion to dismiss is that, while the claims newly asserted against it in the second amended complaint arise from Brooks' 2018 hospital visits, the claims asserted against Gulf in the Complaint arose exclusively from his February 2019 visit.  (Doc. 56 at 9; Doc. 67 at 5, 7).  Because the Complaint in fact asserts claims against Gulf based on Brooks' 2018 hospital visits, Gulf's argument fails.

---

    [10] Gulf says its understanding of the plaintiff's brief is "consistent" with paragraphs 22 and 36 of the Complaint, which it says "limited" the plaintiff's claim against Gulf to 2019 conduct.  (Doc. 56 at 5; Doc. 67 at 4-5).  By its terms, paragraph 22 addressed only the conduct of  the physician defendants, so it could hardly eliminate a claim based on the conduct of other health care providers.  By its terms, paragraph 36 addressed only the liability of the physician defendants, (Doc. 1 at 10), so it likewise could not eliminate a claim basing Gulf's liability on the conduct of others.

## CONCLUSION

For the reasons set forth above, Dr. Watterson's motion to dismiss is **granted**, and Gulf's motion to dismiss is **denied**.  The second amended complaint is **dismissed** to the extent it seeks to assert a claim against Dr. Watterson for malpractice or other wrongdoing on September 28, 2018.

DONE and ORDERED this 29th day of October, 2021.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE